**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| JOHN GEORGE, | ) | Civil Action No. |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| YOUNGSTOWN STATE UNIVERSITY and JAMES TRESSEL, | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendants. | ) | FILED ELECTRONICALLY |

**COMPLAINT**

Plaintiff John George ("Dr. George" or "Plaintiff"), by and through undersigned counsel, files this Complaint stating claims under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., Title VII, 42 U.S.C. § 2000e et seq., and Title IX, 20 U.S.C. § 1681 et seq., stating as follows:

**I. PARTIES**

1. Dr. George is an adult individual residing in Mahoning County, Ohio.

2. Defendant Youngstown State University ("YSU") is a public institution of post-secondary education with its principal place of business at 1 University Plaza, Youngstown, Ohio 44555.

3. Defendant James Tressel ("President Tressel") is the president of YSU and has his principal place of business at 1 University Plaza, Youngstown, Ohio 44555.

**II. JURISDICTION**

4. The jurisdiction of this Court over matters in this Complaint is founded upon 28 U.S.C. § 1331 and 42 U.S.C. § 2000e.

### III. VENUE

5. The events set forth in this Complaint occurred in Mahoning County, Ohio, in the Northern District of Ohio; therefore, venue is appropriate in this Court.

### IV. ADMINISTRATIVE EXHAUSTION

6. Dr. George filed an administrative charge with the U.S. Equal Employment Opportunity Commission ("EEOC") in January 2019; this charge was docketed at 532-2019-00694.

7. Dr. George cross-filed the aforementioned charge with the Ohio Civil Rights Commission ("OCRC").

8. The EEOC issued a "Right to Sue" notice to Dr. George on or about November 15, 2019, thereby giving him the right to place his claims in court; this notice has been attached as "Exhibit A."

9. Dr. George filed an additional administrative charge with the EEOC and the OCRC in July 2019; this was docketed by the EEOC at 532-2019-02326.

10. As soon as the claims set forth in the second administrative charge are administratively exhausted, Plaintiff will seek leave to file an amended complaint embracing those claims.

### V. FACTS

11. Dr. George was an Assistant Professor in YSU's Department of Engineering Technology in the College of Science, Technology, Engineering, & Mathematics ("STEM").

12. Dr. George was born in 1950 and is sixty nine years of age.

13. Dr. Martin Abraham was the former provost of YSU.

14. Dr. George filed a lawsuit in the U.S. District Court for the Northern District of Ohio

alleging employment discrimination on November 6, 2017.

15. Dr. George previously had filed a lawsuit against YSU alleging age and racial discrimination in 2006.

16. In March 2008, Dr. George executed a Settlement Agreement regarding the aforementioned lawsuit.

17. As part of the Confidential Settlement Agreement, Dr. George was reinstated for the 2008-09 academic year on a "Term" contract basis and was granted automatic one-year renewals through the 2011-12 academic year.

18. On or about April 20 or 21, 2015, Dr. George was informed by his Department Chair, Carol Lamb ("Dr. Lamb") that his "Term" position would be eliminated for the 2015-16 academic year.

19. Since the elimination of his "Term" position Dr. George has been unable to secure full-time employment at YSU.

20. Dr. George applied for the position of Lecturer in the School of Technology – First Year Engineering Technology on November 15, 2017.

21. Dr. George is qualified for this position based on his education and experience, including that it is very similar to his former position at YSU and it entails teaching the same courses (ENTC 1500, the Technical Skill Development course he developed in 2002 and completely overhauled in 2008, and ENTC 1505) in his former position.

22. Dr. George improved the first year ENTC 1500 course which he taught upon return for seven years as an assistant professor and one year on a part time basis.

23. ENTC 1500 (4 semester hours) from Fall 2008 forward was an intervention class for

approximately 50% of students entering YSU with ACT math scores in the range of 14 to 21 who sought to matriculate into studies leading to an engineering technology degree.

24. ENTC 1500 is a problem solving course for students which (1) involves cooperative peer learning, (2) teaches problem solving skills through "problem solving teaching," and (3) builds student resilience through strategic practices, customizable toolset, and common problem solving methodology.

25. As an Assistant Professor, Dr. George also successfully taught ENTC 1505.

26. Dr. George implemented best practices in both classes and performed a complete assessment of ENTC 1500 in his YSU doctoral dissertation and subsequent published peer reviewed journal article.

27. ENTC 1505 (4 semester hours) is a common entry credit class for students at a college trigonometry level as they begin their studies leading to an engineering technology degree.

28. There are two entry points into ENTC 1505: (1) qualify by virtue of an ACT math score of 22 or higher so as to take at a minimum MATH 1511 Trigonometry (3 semester hours) at the same time as ENTC 1505, or (2) advance through MATH 1510 College Algebra (4 semester hours).

29. The traditional route of engineering technology students to advance to MATH 1510 was to take an intermediate algebra (non-credit) class (4 semester hours) at the same time as ENTC 1500 and in the following term take MATH 1510.

30. The Departmental Chair, Dr. Lamb, posted the position because the first year program lost stability following Dr. George's termination.

31. According to Dr. Abraham, he put the Lecturer search on hold in December 2017 and

contacted YSU's legal department because Dr. George had applied.

32. On January 23, 2018, Dr. Abraham told Dean Wim Steelant ("Dean Steelant") that the Lecturer search was on hold because Dr. George had applied and he was reviewing the matter with legal counsel.

33. According to Dean Steelant: "[t]he Provost said that there might be an issue because a person by the name of John George applied to this position. And the issue that he referred to was, and that's the only thing he told me, was that John George...had a similar position and didn't get renewed at one point.…" Dr. George was being singled out for discrimination and/or retaliation.

34. On February 6, 2018, Dean Steelant stated: "[t]he School of Technology was approved for a lecturer position. However, the issue came about with John George."

35. Dr. Abraham then said he put a hold on the Lecturer position as the result of a report from the Accreditation Board for Engineering and Technology ("ABET") that YSU needed to support a new lab technician position.

36. Dr. Abraham's rationale is pretextual because the ABET report merely raised a future concern that the Department should provide assistance to faculty in setting up labs.

37. YSU Assistant Professor Jason Zapka ("Prof. Zapka") (who was involved in the accreditation process) has testified that the ABET site visit went very well and the Department received the full six year accreditation without the need for additional lab staff.

38. At no point did ABET require YSU to hire a lab technician or coordinator, and no steps have been taken since the ABET report by YSU to hire such an employee.

39. No job posting for a lab coordinator or a lab technician has been made nor has any lab coordinator or lab technician search committee been set up.

40. Dr. George actually would have been well-qualified for such a position.

41. YSU apparently has abandoned the lab position rationale; Dr. Lamb, who was aware of Dr. George's protected activity including this lawsuit, allegedly "pulled" the Lecturer position in December 2017 although her testimony was that she did so in late January/early February 2018.

42. Dr. Lamb's claim that she herself pulled the position because concurrent mathematics courses would no longer be offered is disputed as pretextual.

43. That justification clearly contradicts Dr. Abraham's rationale of a need for a lab position.

44. In January 2018, Dr. Lamb told Prof. Zapka that the Lecturer position had been put "on hold."

45. The claim by Dr. Lamb that all "remedials," in which she lumped both Elementary and Intermediate Algebras, as no longer available to students at YSU is pretextual since only MATH 1501 Elementary Algebra (5 semester hours) had been removed whereas Intermediate Algebra courses would continue to be widely available to students at YSU through at least spring 2019.

46. Hence there was no linkage between offering ENTC 1500 and the availability of an appropriate math course for such students with aspirations of a degree in any engineering technology major.

47. Moreover, currently students with ACT math scores between 14 and 21 take a non-credit course – MATH 1510C (2 semester hours); co-requisite support for students needing to build prerequisite skills for college algebra.

48. In addition, students who take a combination of MATH 1510 and MATH 1510C further are required to take a non-credit MATH 1511C (1 semester hour) plus MATH 1511 (3

semester hours) to qualify for ENTC 1505.

49. There is ample time for at least half of prospective engineering technology students to take ENTC 1500.

50. The matching need for prospective engineering technology students is demonstrated by the following: +3.5% (average annual) enrollment growth [Fall 2013-Fall 2016] vs. -11.4% (average annual) enrollment decline in years since the first year program "lost stability" [Fall 2016-Fall 2019]. Ref: YSU Institutional Research *Fall 14th Day Enrollments*.

51. In December 2017, Dr. Lamb cancelled the initial search committee meeting citing a personal scheduling conflict, but as the hiring manager actually she was not on that committee and not expected to be at a meeting.

52. On January 23, 2018, Dean Steelant recommended to Dr. Abraham in response to the "John George issue" that they "repost [the Lecturer position] in August/September as a tenure track position with hire Fall 2019."

53. Dean Steelant then relayed to Dr. Lamb that "somebody applied to it that held the position and...is now applying again to it," which referred to Dr. George.

54. According to Dr. Abraham, "the decision was made to wait until fall of 2018 to post for [Lecturer position]," but no posting has been made to date.

55. Dean Steelant said the search for the Lecturer position is still open and the position is going forward, contrary to YSU's claim that the position now has been "pulled."

56. YSU knows that Dr. George is well-qualified for the Lecturer position and interested in it.

57. Dr. Lamb had been a job reference for Dr. George and hired him to teach classes in

Fall 2015 and Spring 2016.

58. However, after being informed of Dr. George's protected activity, Dr. Lamb claimed that she now was "uncomfortable" with Dr. George (a YSU alum) being on campus, and complained to the YSU administration in 2018 that Dr. George was using an open computer lab.

59. Department member Mike Costarell warned Dr. Lamb via email on April 9, 2018 of "former employee and current plaintiff John George on campus today...walking toward the Beeghly College of Education."

60. Apparently YSU put the Lecturer position on hold in Spring 2018 and failed to repost it thereafter in retaliation against Dr. George for engagement in protected activity.

61. Dr. George did not learn that the position of Lecturer, First Year Technology, had been pulled until June 20, 2018.

62. Moreover, Dr. George did not learn that he had not been hired for the position of Lecturer, Math & Statistics, until June 2018.

63. As a result, Dr. George suffered damage and has not been able to receive full-time employment at YSU or restore his reputation at the University.

64. In Spring 2018, Dr. George applied for Lecturer in Math and Statistics.

65. The members of the Search Committee for Lecturer in Math and Statistics were aware of Dr. George's protected activity because one of the members had announced during a search committee meeting knowing that Dr. George had a lawsuit against the University.

66. Hiring Manager Thomas Wakefield ("Prof. Wakefield") also knew that Dr. George had sued the University.

67. YSU failed to hire Dr. George for any of the three positions for Lecturer in Math and

Statistics.

68. Three females were selected to fill these positions.

69. YSU claims that it did not hire Dr. George for the position of Lecturer in Math and Statistics because he was not qualified and had been disqualified because he did not have a Master's Degree in Mathematics.

70. Dr. George disputes the justification that he was not qualified including that he had an extensive background in math and statistics and had taught multiple math courses at YSU.

71. Dr. George also disputes the claim that he was automatically disqualified because he did not have a Master's Degree in Mathematics for reasons including that he had sufficient math course work from his master's and doctorate in education for the position.

72. Search Chair and Senior Lecturer Lori Carlson ("Lecturer Carlson") conducted an assessment of math equivalencies for Dr. George's application as well as another candidate's application.

73. Equivalencies are used in other searches in the Math Department as well as other YSU Departments.

74. During the Search, the Search Committee discussed the fact that Dr. George had filed suit against the University.

75. This was highly prejudicial: Lecturer Carlson conceded that any employer "would be biased" against anyone applying for a job who had sued that employer.

76. YSU and Provost Martin Abraham knew that prior lawsuit evidence could jeopardize a candidate's position in a search, but took no steps to prevent this form of retaliation from occurring to Dr. George.

77. YSU apparently failed to hire Dr. George for the position of Lecturer in Math and Statistics in retaliation against him for having filed a lawsuit and/or engaging in other protected activity.

78. As a result, Dr. George has suffered damage including the loss of the Lecturer position and damage to his reputation.

79. In September 2018, Dr. George applied for three positions at YSU: Research Analyst (PA00345), Coordinator of the YSU Center for Student Progress (PA00342), and Coordinator of the YSU Math Assistance Center (PA00341).

80. Dr. George did not personally receive any response to his application for the open position of Research Analyst (PA00345) but understands now that it was filled in February 2019.

81. In November 2018, Dr. George applied for two open positions at YSU: Coordinator, Technology & Training (PA00350) and YSU Research and Evaluation Associate, Center for Human Services Development ("CHSD") (PA00366).

82. On November 29, 2018, the position of Coordinator of the YSU Center for Student Progress (PA00342) was offered to an applicant other than Dr. George.

83. On December 27, 2018, the position of Coordinator of the YSU Math Assistance Center (PA00341) was offered to an applicant other than Dr. George.

84. While he was invited to a job interview on December 19, 2018 for the position of YSU Research & Evaluation Associate, CHSD (PA00366), Dr. George did not receive any offer for either of the two positions that he applied for in November 2018 and understands the CHSD position was filled in January 2019.

85. When Dr. George received his interview for the Research and Evaluation Associate, CHSD, position on December 19, 2018, he asked the search committee for a tentative fill date; the Chair of the Search, Elizabeth Cianciola replied that only the hiring manager, Angela Cameron, Director of CHSD, would know that.

86. Dr. George is qualified, if not overqualified, for all of the positions that he applied for at YSU.

87. Dr. George engaged in protected activity when he brought his former and his pending claims under Title VII against YSU.

88. Dr. George engaged in protected activity when he settled his prior lawsuit, and when he worked through the settlement in good faith.

89. Dr. George has been subjected to retaliation in that he has been blackballed from subsequent employment at YSU.

90. The conduct of YSU, Dr. Abraham, and/or the decisionmakers was precipitated by the fact that Dr. George engaged in protected activity.

91. YSU failed to hire Dr. George because of his age.

92. YSU engaged in retaliatory activity against Dr. George by failing to hire him.

93. Dr. George requests a jury trial.

## VI. COUNTS

### COUNT I: RETALIATION
**PLAINTIFF JOHN GEORGE V. DEFENDANT YOUNGSTOWN STATE UNIVERSITY**
**Violation of Title VII, 42 U.S.C. § 2000e et seq.**

94. The preceding paragraphs are incorporated as if set forth at length herein.

95. Title VII protects individuals who engage in activities that are in opposition to sex

discrimination from adverse employment actions.

96. Dr. George engaged in numerous protected activities over the years including, but not limited to, (1) filing a federal lawsuit against YSU on December 13, 2006 under, *inter alia*, Title VII and Ohio anti-discrimination law due to the denial of tenure and termination; (2) entering into a settlement agreement in February 2008 resulting in his reinstatement, (3) dual-filing retaliation and age discrimination administrative charges against YSU on January 21, 2016 due to his termination under highly questionable circumstances and despite highly positive performance evaluations, (4) filing a federal lawsuit against YSU and individual administrators on November 6, 2017 under Title VII, Title IX, the ADEA, and Ohio anti-discrimination law relating to his termination and subsequent failures to hire for positions to which he was qualified, and (5) filing the most recent EEOC charges in 2019.

97. YSU retaliated against Dr. George by failing to hire him for any of the positions to which he applied after November 2017.

98. Dr. George was qualified for the positions to which he applied.

99. The failure to hire Dr. George qualifies as an adverse employment action.

100. The aforementioned adverse actions were in response to, and in retaliation for, Dr. George's protected actions.

101. Dr. George seeks all remedies and damages permitted under Title VII, including back pay, damages for lost prospective future employment, damages for prospective harm in his present position, compensatory damages for emotional pain and suffering, injunctive and declaratory relief, and payment of his litigation costs, including reasonable attorneys' fees, plus pre-judgment and post-judgment interest.

**COUNT II: RETALIATION**
**PLAINTIFF JOHN GEORGE V. DEFENDANT JAMES TRESSEL**
**Violation of the ADEA, 29 U.S.C. § 621 et seq.**

102. The preceding paragraphs are incorporated as if set forth at length herein.

103. The individual Defendant to this charge–President Tressel–is being sued in his official capacities for prospective injunctive relief and declaratory relief.

104. The ADEA protects individuals who engage in activities that are in opposition to age discrimination from adverse employment actions.

105. Dr. George engaged in numerous protected activities over the years including, but not limited to, (1) filing a federal lawsuit against YSU on December 13, 2006 under, *inter alia*, Title VII and Ohio anti-discrimination law due to the denial of tenure and termination; (2) entering into a settlement agreement in February 2008 resulting in his reinstatement, (3) dual-filing retaliation and age discrimination administrative charges against YSU on January 21, 2016 due to his termination under highly questionable circumstances and despite highly positive performance evaluations, (4) filing a federal lawsuit against YSU and individual administrators on November 6, 2017 under Title VII, Title IX, the ADEA, and Ohio anti-discrimination law relating to his termination and subsequent failures to hire for positions to which he was qualified, and (5) filing the most recent EEOC charges in 2019.

106. YSU retaliated against Dr. George by failing to hire him for any of the positions to which he applied after November 2017.

107. Dr. George was qualified for the positions to which he applied.

108. The failure to hire Dr. George qualifies as an adverse employment action.

109. The aforementioned adverse actions were in response to, and in retaliation for, Dr.

George's protected actions.

110. Dr. George seeks all equitable remedies and injunctive relief permitted by law, including, but not limited to, prospective injunctive relief, declaratory relief, and payment of his litigation costs including reasonable attorneys' fees.

### COUNT III: RETALIATION
**PLAINTIFF JOHN GEORGE V. DEFENDANT YOUNGSTOWN STATE UNIVERSITY**
**Violation of Title IX, 20 U.S.C. § 1681 et seq.**

111. The preceding paragraphs are incorporated as if set forth at length herein.

112. Title IX prohibits educational institutions that receive federal funding from retaliating against employees who complain of discriminatory actions.

113. YSU is an educational institution that receives federal funding.

114. Title IX protects individuals who engage in activities that are in opposition to sex discrimination from adverse employment actions.

115. Dr. George engaged in numerous protected activities over the years including, but not limited to, (1) filing a federal lawsuit against YSU on December 13, 2006 under, *inter alia*, Title VII and Ohio anti-discrimination law due to the denial of tenure and termination; (2) entering into a settlement agreement in February 2008 resulting in his reinstatement, (3) dual-filing retaliation and age discrimination administrative charges against YSU on January 21, 2016 due to his termination under highly questionable circumstances and despite highly positive performance evaluations, (4) filing a federal lawsuit against YSU and individual administrators on November 6, 2017 under Title VII, Title IX, the ADEA, and Ohio anti-discrimination law relating to his termination and subsequent failures to hire for positions to which he was qualified, and (5) filing the most recent EEOC charges in 2019.

116. YSU retaliated against Dr. George by failing to hire him for any of the positions to which he applied after November 2017.

117. Dr. George was qualified for the positions to which he applied.

118. The failure to hire Dr. George qualifies as an adverse employment action.

119. The aforementioned adverse actions were in response to, and in retaliation for, Dr. George's protected actions.

120. Dr. George seeks all remedies and damages permitted under Title IX, including back pay, damages for lost prospective future employment, damages for prospective harm in his present position, compensatory damages for emotional pain and suffering, injunctive and declaratory relief, and payment of his litigation costs, including reasonable attorneys' fees, plus pre-judgment and post-judgment interest.

### COUNT IV: DISCRIMINATION ON THE BASIS OF AGE
### PLAINTIFF JOHN GEORGE VS. DEFENDANT JAMES TRESSEL
### Violation of the ADEA, 29 U.S.C. § 621 et seq.

121. The preceding paragraphs are incorporated as if set forth at length herein.

122. The individual Defendant to this charge–President Tressel–is being sued in his official capacities for prospective injunctive relief and declaratory relief.

123. Dr. George is over 40 years of age and, as such, is a member of a class protected by the ADEA.

124. Since November 2017 Dr. George has applied for multiple positions at YSU.

125. Dr. George is qualified for the positions at YSU to which he applied.

126. Even though he was qualified for these positions, Dr. George was not selected for them.

127. Instead of Dr. George, significantly younger candidates who were less qualified were selected to fill the open positions at YSU.

128. The fact that Dr. George was not hired for the positions while, at the same time, significantly younger but less qualified candidates were hired indicates that he was treated less favorably than significantly younger applicants.

129. A failure to hire a qualified employee for a job opening constitutes an adverse employment action.

130. Dr. George suffered adverse employment actions while his significantly younger colleagues did not suffer similar actions.

131. Dr. George seeks all remedies and damages permitted under the ADEA including, but not limited to, prospective injunctive relief, declaratory relief, and payment of his litigation costs including reasonable attorneys' fees.

Respectfully Submitted,

LIEBER HAMMER HUBER & PAUL, P.C.


s/James B. Lieber
James B. Lieber
PA I.D. No. 21748
Thomas M. Huber
PA I.D. No. 83053
1722 Murray Ave., 2nd Floor
Pittsburgh, PA 15217
(412) 687-2231 (tel.)
(412) 687-3140 (fax)
Counsel for Plaintiff